Murphy *v.* Taylor et al., Appellants.

188

Argued March 20, 1970.  Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Robert E. Wayman,* with him *Wray G. Zelt, R. Wallace Maxwell* and *Wayman, Irvin, Trushel & McAuley,* for appellants.

*W. Robert Thompson,* with him *Thompson & Baily,* for appellees.

OPINION BY MR. JUSTICE JONES, October 9, 1970:

On January 4, 1968, at the intersection of Routes 88 and 21 in Greene County, a motor vehicle operated by Daniel Murphy was struck by a lumber truck which was being operated by James Taylor for his employer, Sprowls Lumber Company. Murphy instituted a trespass action in the Court of Common Pleas of Greene County, against Taylor and Sprowls Lumber Company to recover damages arising from the accident.

In the area of the accident, commencing about 600′ before its intersection with Route 88, Route 21 broadens from a two-lane highway to a four-lane highway. A medial strip separates the east and westbound lanes of Route 21 for approximately 300′ on either side of the intersection. While Route 21 was being widened,—up until one month prior to the accident,—the two westbound lanes had been used for both east and westbound traffic.

On the day in question, both vehicles were traveling in an easterly direction on Route 21 when Murphy attempted to turn left from Route 21 to proceed north on Route 88 and was struck by Taylor. Murphy testified that he was in the left-hand, eastbound lane as he approached the intersection and that he put on his left blinker light, looked in his rear-view mirror, saw no traffic, and began to turn left onto Route 88 when he was struck by the lumber truck. This version of the accident was corroborated by two highway department employees who were stopped at the intersection who, also, claimed to have seen Taylor proceeding eastbound in the westbound lanes, on the wrong side of the medial strip.

On the other hand, Taylor testified that *he* was in the left-hand, eastbound lane and that he was about to pass Murphy in the right-hand lane, when Murphy, suddenly and without warning, turned left, directly into the path of Taylor's truck. Taylor testified that he

then swerved as far to his left as possible, but was unable to avoid striking Murphy's car. This version of the accident was corroborated by the driver and the passenger in a Coca-Cola truck which Taylor had passed immediately before the accident and also by the operator of a gas station at the intersection of Routes 21 and 88.

Following a jury trial and a $92,000 verdict in favor of Murphy, defendants' motion for a new trial was denied, judgment was entered on the verdict and this appeal followed.

The first point raised is whether the trial court erred in taking the jury to a view of the accident scene, without the presence of counsel for either the plaintiff or the defendants. Following the selection of the jury, on the morning of February 3, 1969, the court recessed and then reconvened at 1:30 p.m. to take the jury to the scene of the accident. At the view, the judge made a short, on-the-record statement, pointed out the two roads, the gas station and other features of the intersection which would be raised in the trial testimony. The jury then returned to the courtroom and the trial began at 3:00 that same afternoon.

In support of the motion for a new trial, it was averred that: "The Court erred in conducting the view of the scene of the accident *without inviting or permitting* Counsel for the parties to be present." (Emphasis added.) This factual averment was specifically denied in the lower court's opinion and the only complaint made on this appeal is that counsel were not, in fact, *present*. The allegation that the trial court neither invited nor permitted counsel to be present apparently has been abandoned.

The trial record simply notes that the view took place and sets forth the statment made by the judge.*

_____

*On March 3, 1970, a hearing was held in the lower court on the issue of whether counsel had discussed and agreed upon the

Although it is preferable, there is no *absolute* requirement that the parties or their counsel be present at a view.

In the instant case, the comments made by the trial judge at the view were in no manner prejudicial to either party and they simply served to "show" the landmarks which would be referred to in the testimony and make the scene familiar to the jury. No further reference was made to the view during the trial and other evidence, substantial in nature, was presented concerning the physical layout of the intersection. Accordingly, we fail to see how the defendants could possibly have been prejudiced solely by the fact their counsel was not present at the view.

Moreover, even if the judge's conduct resulted in prejudice to defendants, which it did not, this issue cannot be considered since it was first raised when additional reasons for a new trial were filed on April 21, 1969. Any objections to the absence of counsel at the view should have been made not later than such time as the court could have corrected such a situation. In that way, any error could easily have been corrected by either further instructions or by a second view. Having waited until after the jury returned with a verdict, the defendants deprived the trial court of any opportunity to correct the alleged error. Since the alleged

view at a side-bar conference. Murphy has attempted to place a transcript of this hearing on the record. The writ of certiorari issued November 14, 1968, and the record was certified to this Court on November 20, 1969. Additions to the record after the writ of certiorari has been issued and the record has been certified to this Court may not be made in this fashion. *Corace v. Balint*, 418 Pa. 262, 210 A. 2d 882 (1965) ; *Commonwealth v. Tabb*, 417 Pa. 13, 207 A. 2d 884 (1965) ; *Harwood v. Bruhn*, 313 Pa. 337, 170 Atl. 144 (1934). Such additions may only be made after application to and order from this Court pursuant to Rule 70 of the *Rules of our Court*. As this additional record is not properly before us, we will not consider it in our determination of this case.

error was not basic and fundamental and since no explanation has been offered which might justify the delay in making any objection, it may be deemed to have been waived. *James v. Ferguson,* 401 Pa. 92, 162 A. 2d 690 (1960) ; *Scranton Lackawanna Trust Co. v. Birbeck,* 333 Pa. 502, 5 A. 2d 196 (1939) ; 6A *Standard Pennsylvania Practice* ch. 28, §23 (1960).

A second communication with the jury has also been urged as error. After the jury had been sent to deliberate, while counsel were arguing further exceptions to the charge, the following exchange took place between the court and counsel for the defendants: "By the Court: I feel that counsel should know that about 7 o'clock I received this note from the jury—'We have found in favor of the Plaintiff. The amount of settlement has not been settled. Do we have to put the amount on the verdict sheet when we agree?', and I sent the note back up with my answer. Mr. Zelt: What was your answer? By the Court: My answer was yes."

This Court has recently stated that *"any* instruction by the trial judge to the jury in the absence of counsel requires the grant of a new trial *regardless of prejudice".  Yarsunas v. Boros,* 423 Pa. 364, 366, 223 A. 2d 696, 697 (1966). *Accord, Argo v. Goodstein,* 424 Pa. 612, 228 A. 2d 195 (1967) ; *Gould v. Argiro,* 422 Pa. 433, 220 A. 2d 654 (1966). Although we have considerable doubts that the instant communication to the jury is the kind of instruction to which *Yarsunas* and *Gould* refer, we need not face that issue here. The attorney for the defendants was present when the judge made the above statement and no objection was raised at that time although, with the jury still deliberating, any error might easily have been corrected. This communication was not mentioned in either set of new trial motions and was not presented in defendants' brief to this Court. This issue was first raised at the time of *oral argument* before this Court on March 20, 1970.

Only in the most exceptional of circumstances would we consider such an issue to be timely raised. In this case, counsel for the defendants repeatedly and consistently ignored every opportunity to raise the point and we will not consider it at this very late date. *Scranton Lackawanna Trust Co. v. Birbeck,* 333 Pa. 502, 5 A. 2d 196 (1939).

The third contention is that the trial court improperly charged the jury on the issue of contributory negligence, by failing to relate the law to the facts. Part of the defense was that Murphy allegedly violated The Vehicle Code by failing to signal 100′ in advance of turning. Act of April 29, 1959, as amended, September 16, 1961, P. L. 1373, §4, 75 P.S. §1012 (Supp. 1970). It is now claimed that the jury was not properly instructed with respect to this issue.

This argument is adequately refuted by that portion of the trial court's charge which reads, *inter alia,* as follows: "There is a question here of when Mr. Murphy put on his turn signal. This is required by The Vehicle Code to be done 100 feet in advance when making a turning movement or a lane change. . . . In this case, if you find that there was a violation of The Vehicle Code of either of these particular provisions by the Murphy vehicle, such violation is said to be negligent *per se.* But in order for you to find that a violation of The Vehicle Code is negligence such as would result in liability or be considered contributory negligence, you must find that the negligence from the violation of The Vehicle Code was the proximate cause of the accident or injury. . . ."

The last two questions raised deal with damages. It is first asserted that the court erred when it charged the jury that plaintiff would be entitled to recover for future pain and suffering and for future medical expenses. The court clearly charged that the jury should first determine from the evidence they deemed credible

whether or not there *would be* future pain and suffering and further expenses.

Testimony was presented at trial from which the jury could have concluded that Murphy would have future pain and suffering and future medical expenses. Dr. Powell, Murphy's surgeon, testified that there had not been full recovery as of the time of the trial. He added that there might be sufficient recovery to resume employment within two to six months, but that statement was heavily conditioned and certainly admitted the *possibility* of a longer period of temporary or even permanent disability. Dr. Birch, the urologist, testified that there were lasting injuries which would require further treatment. In addition, the testimony of Murphy and his wife indicated that his injuries were still painful and disabling. While the presence of more testimony on this issue might have made the jury's and our task easier, we cannot say that the evidence presented was insufficient as a matter of law to justify the court charging on future pain and suffering and future medical expenses.

The final contention is that the verdict was excessive. The jury returned an award of $92,000 while the actual out-of-pocket expenses at the time of trial were somewhere between $12,000 and $15,000. This was a serious accident. The jury was properly instructed on the issue of damages and the trial judge concluded that this verdict was fair and just. The grant or refusal of a motion for a new trial because of excessiveness of verdict is peculiarly within the discretion of the trial court and we will not interfere unless the record discloses an abuse of discretion or an error of law committed. *Connolly v. Philadelphia Transp. Co.,* 420 Pa. 280, 216 A. 2d 60 (1966); *Hall v. George,* 403 Pa. 563, 170 A. 2d 367 (1961).

The record discloses that the trial judge neither abused his discretion nor committed an error of law in upholding this verdict.

Judgments affirmed.

Mr. Chief Justice BELL, Mr. Justice EAGEN, Mr. Justice ROBERTS and Mr. Justice POMEROY concur in the result.

Mr. Justice COHEN dissents.